■ In the Matter of ALBERT SCHWARTZBERG et al., Doing Business as KINGS HARBOR CARE CENTER, et al., Respondents, v DAVID AXELROD, as Commissioner of the Department of Health of the State of New York, Appellant, and INSTLCORP, INC., Intervenor-Respondent.—Mahoney, P. J. Appeals (1) from an order of the Supreme Court at Special Term (Doran, J.), entered March 27, 1985 in Albany County, which, in a proceeding pursuant to Public Health Law § 2810, set a fair monthly rental of $12,401.73 for the use of petitioners' facilities, and (2) from that part of an order of said court, entered May 16, 1985 in Albany County, which directed respondent to pay an interim rental of $4,381 for use of petitioners' facilities in March 1985.

Petitioners are the former owners of two health care facilities. In February of 1978, respondent was appointed receiver of the facilities pursuant to Public Health Law § 2810 (2) (a). Petitioners sought a fair monthly rental from respondent (Public Health Law § 2810 [2] [b]) and, pending a hearing, Special Term set the interim rate at $4,381 per month. By order entered February 23, 1983, Special Term set the fair monthly rental at $12,761. On appeal, this court reversed, holding that Public Health Law § 2810 (2) (b) limited the fair rental value to the amount which could have been reimbursed pursuant to Medicaid guidelines (100 AD2d 694, 695). Accordingly, $206,000 of the investment by petitioners which was used to calculate the fair monthly rental should have been excluded as it was in excess of the applicable reimbursement

ceilings for moveable equipment. Additionally, certain other expenses were held to be excluded. On remittal, Special Term decided not to exclude the $206,000 because petitioners pointed out for the first time in this proceeding that the moveable equipment reimbursement ceiling had been eliminated in 1982. Special Term then recalculated the fair monthly rental at $12,401.73 and ordered respondent to pay the difference between that amount and the interim amount from February of 1979 to February of 1985. Special Term further ordered respondent to pay the fair monthly rental for every month after February of 1985 that the receivership continued. In a separate order, Special Term ordered respondent to pay the interim monthly rent in addition to the fair monthly rental for March of 1985. Respondent appeals from both orders.

Initially, we reject respondent's contention that petitioners were entitled to no return on their investment since they had a negative equity. This argument was rejected when the matter was before Special Term for the first time for lack of proof. Respondent failed to raise this issue on the first appeal and thereby waived it (see, Matter of Smith, 91 AD2d 789). This bars consideration of this issue on the instant appeal (see, Stokes v County of Suffolk, 63 AD2d 645, 646).

Respondent argues that Special Term violated this court's order when it included the $206,000 after this court decided that it should have been excluded. Special Term's decision was improper since it violated the specific instruction in this court's decision to exclude the $206,000 (see, Bolm v Triumph Corp., 71 AD2d 429). Further, even if the issue had properly been before Special Term, the removal of the ceiling on moveable equipment in 1982 does not justify inclusion of the $206,000. The expenses which formed the basis for the calculation of fair monthly rental were incurred between 1974 and 1979, such that the ceiling was applicable to these expenses.* We perceive no legislative intent to give retroactive effect to the removal of such ceiling in 1982, especially in light of the fact that the statutory scheme for Medicaid rate reimbursement is generally prospective in nature (see, Matter of Sigety v Axelrod, 91 AD2d 1091, 1092). Therefore, despite the fact that the ceiling was removed in 1982, the $206,000 must be ex-

---

* We are aware that this court has recently held, in an unrelated proceeding, that the ceiling was ineffective since it was never formally promulgated and filed as a regulation (Matter of Eden Park Health Servs. v Axelrod, 114 AD2d 721). However, petitioner herein has never challenged the ceiling on this ground.

cluded as in excess of the ceiling in place at the time the expenses were incurred.

Next, respondent contends that it was improper for Special Term to order him to pay any fair monthly rental after February of 1985. Special Term relied on Public Health Law § 2810 (2) (b) which provides, in pertinent part, that "[s]uch rental shall be paid by the receiver to the owner or owners of the facility and to the owner or owners of furniture, fixtures and moveable equipment therein for each month that the receivership remains in effect". A problem is created here since the method used to calculate fair monthly rental was to take the unreimbursed cost (total cost less Medicaid reimbursement) and amortize it over the six-year remaining useful life of the equipment along with a factor for return on investment. Thus, since the payment of rent started in February of 1979, the investment was fully depreciated by February of 1985. We agree with respondent that further rental payments after February of 1985 would be inappropriate. There are presumably a number of ways that fair monthly rental can be calculated. Also, receiverships are generally of a shorter term (Public Health Law § 2810 [2] [c]; *see, Matter of Schwartzberg v Whalen*, 96 AD2d 974, 975). Where the method used to calculate fair monthly rental is designed to amortize unreimbursed costs and return them to the owner over a period of time, it would be irrational to continue such payments after the useful life which was used for amortization purposes has expired. At such point, the owner would be fully reimbursed and continued receipt of payments would amount to a windfall. Therefore, in the instant case, respondent should not have been required to make any payments for rental after February of 1985. We note in this regard that, even if the payments had to continue after that date, it was improper for Special Term to require respondent to pay the fair monthly rental figure plus the interim figure for the month of March 1985.

Finally, we agree with Special Term that interest could properly be included on the amount of the fair monthly rental less the interim rental which has been paid. Neither Public Health Law § 2810 nor State Finance Law article XI-A can be read to specifically authorize interest. However, while the failure of a statute to expressly authorize interest is an important factor to be considered *(see, Matter of National Farmers Org. v Gerace,* 66 NY2d 719), it is not determinative *(see, Matter of Brodsky v Murphy,* 25 NY2d 518; *Matter of O'Berry,* 179 NY 285). In *Matter of National Farmers Org. v*

*Gerace (supra),* the Court of Appeals noted that the petitioner therein could have demanded payment immediately upon the agency's determination but failed to do so. The court also noted that the payment was from the milk producers security fund which was not created to compensate milk producers for actual losses and which could be threatened by the payment of large interest awards. In *Demisay v Whalen* (84 AD2d 902), this court precluded interest on the payment of Medicaid reimbursement funds. The instant case is distinguishable because the fair monthly rental is not being paid from a benefit fund. Rather, the purpose of paying fair monthly rental is to compensate the nursing home operator for losses incurred when respondent takes over the operation of the nursing home. The statute authorizes the court to consider "all relevant factors" in determining the fair monthly rental (Public Health Law § 2810 [2] [b]). Thus, what is involved is not a benefit, but, in essence, a return of the operator's property; essentially, an attempt is made to compensate the operator for actual losses. Lastly, there is no fund at jeopardy. Respondent, as receiver, collects the income of the facility, part of which must be returned to the owner as fair monthly rental. To the extent that there is a delay in payment of fair monthly rental, respondent has had the use of money which should have been paid out as an expense of the facility. Therefore, we conclude that Special Term has the discretion to provide for interest on the delayed payment of fair monthly rental pursuant to Public Health Law § 2810.

Order entered March 27, 1985 reversed, on the law, without costs, and matter remitted to Special Term for further proceedings not inconsistent herewith.

Order entered May 16, 1985 modified, on the law, without costs, by reversing so much thereof as directed respondent to pay petitioners an interim rental for March 1985, and, as so modified, affirmed. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.